# EXHIBIT "A"

COPY

CAUSE NO. CC-08-11146 

| | | |
|---|---|---|
| NAKESHA EDWARDS | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| v. | § | AT LAW NO. 2 |
| LARRY KEITH LAKE d/b/a V.I.P. FINANCE and C.A.S.H. AUTO SALES, L.L.C. | § | |
| Defendants | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Nakesha Edwards files this Petition, complaining of Larry Keith Lake d/b/a V.I.P. Finance and C.A.S.H. Auto Sales, L.L.C. and for cause of action plead herein would respectfully show the following:

### A. DISCOVERY CONTROL PLAN

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs intend to conduct discovery in this case under Level 2.

### B. PARTIES

2. Plaintiff Nakesha Edwards is an individual who resides at 11822 Garden Terrace Dr., Dallas, Texas 75243, Dallas County, Texas.

3. Defendant Larry Keith Lake d/b/a V.I.P. Finance is an Individual who can served at his home at the following address: 913 Keller Smithfield Road S., Keller, Texas 76248. Service of

1

said Defendant can be effected by a private process server.

4.  Defendant C.A.S.H. Auto Sales, L.L.C. is a company organized under the laws of Texas. It can be served through its registered agent, Larry K. Lake, at 2 Crestwood Drive #2, Roanoake, Texas 76262. Service of said Defendant can be effected by a private process server.

## C. Venue

5.  Venue is proper in this county under the Texas Civil Practice and Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County.

## D. Facts

8.  On or about March 13, 2006, Plaintiff borrowed approximately $1,450.00 from V.I.P. Finance ("VIP"). VIP is not an entity, but rather an assumed named used by Lake. To collateralize on the loan, Plaintiff left the title to her paid-for 1997 Ford Expedition. V.I.P. installed a global positioning system ("GPS") tracking device on the vehicle. The loan agreement (Exhibit A) arranged for 46 weekly installments of $35, 9% interest, ending in February 2007, (meaning that Plaintiff would be obliged to pay back a total $1614.02). As additional collateral, Plaintiff was told by employees ("Dustin" and "Rachelle") of Defendant that she was required to sign up for an auto club membership. The weekly membership fees were also $35. So, this auto club membership doubled her payments to $70.00 a week. Plaintiff entered into this agreement and began making payments on the loan.

9.  Nakesha Edwards is thirty-three old mother of three who found herself abandoned and desperate in the Winter of 2006. Living with her three kids in her vehicle, Ms. Edwards saw an ad placed by VIP Financing in a newspaper advertising loans on car title. The ad promised financing for one year at a 10% interest rate with no credit check in exchange for the car title. Eager to escape

her dire financial straits, Ms. Edwards contacted VIP Financing shortly thereafter, inquiring as to the possibility of receiving a cash loan in exchange for the title to her car. VIP Finance enthusiastically offered her a loan.

10. On or about January 10, 2007, Nakesha's car was broken into and was subsequently impounded. She called VIP Finance and asked them to tow the car in accordance with the terms of the Auto Club Service contract which provides for free towing to a Cash Auto Sales Service Center. She told them where the car was located even though the terms of the Auto Club provide for a free A.V.L. (Automatic Vehicle Locating) service using the GPS system that was installed in her vehicle. VIP Finance accepted her request and retrieved her vehicle. Shortly after, Nakesha received a bill stating that she owed Auto Club money for towing the car, repossessing the car, and for locating the car, even though the contract terms indicate that these services are to be provided free of charge. Nakesha capitulated to their request and paid the bill in full.

11. The loan agreement should have terminated on February 5, 2007. However, at Defendant's urging, Plaintiff continued making payments on the loan past this date. Plaintiff continued to make the $70.00 a week loan payments until August 2007. In August 2007, Defendant contacted Plaintiff and told her that she was behind on her payments and that she still owed on the first loan. Therefore, Defendant misrepresented to Plaintiff that she needed to refinance. Relying on these misrepresentations, Plaintiff signed a second loan agreement in August 2007. This second agreement increased her payments to $48/week for the loan and $50/week for the Auto Club Membership. However, according to the payment history, Plaintiff had overpaid on the first loan

3

and Defendant made misrepresentations to get her to refinance and enter into a second loan agreement.

12. Under the refinancing agreement, $250.00 dollars were given directly to Plaintiff, $1605.62 was paid on her account, which at this juncture, should have already been paid off, and another $100.00 was used to set up the Auto Club membership, which had already been set up, totaling $1955.62 dollars. Taking on a 9.0% interest rate, Plaintiff was to pay back a grand total of $2029.75 in 42 equal weekly installments of $48.00 with a final payment of $13.75 dollars due in June of 2008.

13. Under the terms of the refinancing documents, the Auto Club membership was to serve once again as additional collateral. Furthermore, the weekly payments on the service contract were also modified, Plaintiff was now obliged to pay $50.00 a week on her Auto Club membership. Altogether, under the terms of the refinance documents, per week, Plaintiff was now to pay $98.00 a week.

14. In January 2008, Plaintiff became weary of all the weekly payments she was making and began questioning Defendant as to why she had paid so much money, and yet still owed more. She called Defendant to inquire why she was still paying off the loan principal and why she was still obligated to remain a member of Auto Club. To say the least, her questions were not warmly received by Defendant. They berated and belittled Plaintiff for her probing and went so far as to denigrate her intelligence.

15. In the dead of night in January 2008, Defendant retaliated against Plaintiff for her inquisitiveness and repossessed her car. When she woke in the morning, ready to go to work, she found no car to take her there. She subsequently called Defendant and demanded to know why they repossessed her car when she was current on all payments. Defendant could not refute this and

returned the vehicle. However, they still tried to make her pay towing costs related to the repossession.

16. In May 2008, Plaintiff had paid $8,918.00 (Exhibit C) on a $1,450.00 loan. In June 2008, Plaintiff received the title to her car back.

## E. AGENCY RELATIONSHIP

17. Larry Keith Lake does business as V.I.P. Finance; therefore, he is the principal. The employees of V.I.P. Finance are agents of the entity. Therefore, their actions as agents are binding on the principal, and thus Larry Keith Lake is liable to Plaintiff for his acts and the acts taken by V.I.P. Finance employees against Plaintiff.

## F. CAUSES OF ACTION FOR DAMAGES

18. <u>Fraudulent Misrepresentation (Common-Law Fraud)</u> – Defendants have committed fraudulent misrepresentation by misrepresenting to Plaintiff that the Auto Club Membership was required to secure the loan. Plaintiff relied upon representations made by Defendants. Defendants' fraudulent misrepresentations proximately caused Plaintiff's injuries.

19. <u>Negligent Misrepresentation</u> – Alternatively, Defendants have committed Negligent Misrepresentation. Plaintiff relied upon representations made by Defendants. Defendants' negligent misrepresentation proximately caused Plaintiff's injuries.

20. <u>Deceptive Trade Practices Act Violations</u> – Defendants have committed numerous violations of the Texas Deceptive Trade Practices Act ("DTPA"). Defendants committed false, misleading or deceptive acts in violation of the DTPA. Plaintiff is a consumer under the DTPA and relied upon

5

Defendants' representations to her detriment. As a result, Plaintiff seeks damages against Defendants for their violations of the DTPA. Defendants are liable under the DTPA for violations of the laundry list provisions of Texas Business & Commerce Code §17.46(b)(12), (14), (23), for committing an unconscionable action or course of action under §17.50(a)(3). These violations were a producing cause of the economic and mental anguish damages sustained by Plaintiff. As such, Plaintiff is entitled to relief for her damages, including statutory and exemplary damages provided under the DTPA.

21. <u>Wrongful Repossession and Conversion</u> - As a result of Defendants' wrongful repossession and conversion of the vehicle made the basis of this suit, both at common law and pursuant to the Texas Theft Liability Act, Plaintiff has been damaged by being deprived of the use and enjoyment of her vehicle, its fair market value, as well as the use and enjoyment of the contents of the vehicle.

22. <u>Violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq.</u> - By requiring the Plaintiff to purchase the membership to the auto club as a condition of making an extension of credit, Defendant has violated the Truth in Lending Act.

23. <u>Breach of Contract</u> - Plaintiff has been damaged by the Defendants' breach of the loan agreement (Exhibit A) and the Auto Club Membership (Exhibit B).

24. <u>Intentional Infliction of Emotional Distress</u> – Defendants have intentionally inflicted emotional distress upon Plaintiff.

### G. TREBLE DAMAGES

25. Because Defendants acted knowingly and intentionally, Plaintiff is entitled to recover three times the amount of damages for mental anguish and economic damages under the Texas Deceptive Trade Practice Act, Texas Business & Commerce Code §17.50(b)(1).

## H. ATTORNEY FEES

26. Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Business & Commerce Code §17.50(d) and multiple other causes of action above.

## J. REQUEST FOR DISCLOSURE

27. Under Texas Rule of Civil Procedure 194, plaintiff requests that defendant disclose within 50 days of the service of this request, the information or material described in Rule 194.2(a), (c) and (f).

## K. DAMAGES FOR PLAINTIFF

28. Plaintiff has been damaged by the acts of all Defendants in an amount that exceeds the jurisdictional limits of the court and Plaintiff seeks all actual, compensatory, punitive and statutory damages as allowed by law, including mental anguish damages and exemplary damages, where allowed.

## PRAYER

29. For these reasons, Plaintiff asks that Defendants be cited to appear and answer and that Plaintiff have judgment against the Defendants for the following:

    1. Actual, compensatory, exemplary, punitive, and statutory damages in an amount exceeding the jurisdictional limit of the court from all Defendants on the corresponding causes of action;
    2. Mental anguish damages;
    3. Treble damages;

7

4. Prejudgment and post-judgment interest at the highest rate allowed by law;

5. Costs of suit;

6. Attorney's fees;

7. All other relief, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

SMU Dedman School of Law Civil Clinic

By: _____
John Eric Cedillo
Supervising Attorney
State Bar No. 00796330

By: _____
Jennifer N. Hinton
Student Attorney
Student Bar No. 24063947

SMU Dedman School of Law Legal Clinic
P. O. Box 750116
Dallas, TX 75275-0116
Phone 214-768-2562
Fax 214-768-1611

Attorneys for Plaintiff